UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GERALD JOSEPH                                    CIVIL ACTION

VERSUS                                           NO. 06-10810

DARRELL DYKES ET AL.                             SECTION "S" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Gerald Joseph, is a convicted prisoner currently incarcerated in the B.B. "Sixty" Rayburn ("Rayburn") Correctional Center in Angie, Louisiana.  He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Captain Darrell Dykes, Classification Officer Jerry Young and Lieutenant Vernon Smith, all of whom work at Rayburn as employees of the Louisiana State Department of Public Safety and Corrections ("DOC").  The complaint alleges that, while plaintiff was incarcerated in Rayburn in August 2006, the defendants retaliated against him because, in his capacity as inmate counsel, he wrote a letter to an attorney for another inmate.  Plaintiff alleges that his actions as inmate counsel were protected by the First and Fourteenth Amendments and that defendants retaliated against him by pursuing improper disciplinary charges against him.  He seeks reinstatement to his position as inmate counsel at the prison, together with damages.  Record Doc. No. 1 (Complaint at ¶ V).

On February 22, 2007, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Rose Wooden, Assistant Louisiana Attorney General, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny. Because of a malfunction in the court's recording mechanism, a second conference was conducted on April 12, 2007. The second conference included the same two participants, and plaintiff was again sworn and testified pursuant to Spears.

The parties engaged in settlement discussions, with the assistance of the court. Record Doc. Nos. 19, 20, 21. When those discussions failed to result in a settlement, defendants filed a motion for summary judgment, supported by affidavits, documents from plaintiff's prison records and copies of DOC policies. Record Doc. No. 23. Plaintiff filed a written opposition memorandum and his own declaration under penalty of perjury. Record Doc. No. 27.

I.    STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it

- 2 -

believes demonstrate the absence of a genuine issue of material fact, but it is not required to negate elements of the nonmoving party's case. <u>Capitol Indem. Corp. v. United States</u>, 452 F.3d 428, 430 (5th Cir. 2006) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law. <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented. <u>National Ass'n of Gov't Employees v. City Pub. Serv. Bd.</u>, 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must come forward with evidence to support the essential elements of its claim. <u>Id.</u> (citing <u>Celotex</u>, 477 U.S. at 321-23). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." <u>Celotex</u>, 477 U.S. at 323; <u>accord</u> <u>Capitol Indem. Corp.</u>, 452 F.3d at 430.

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." <u>Edwards v. Your Credit, Inc.</u>, 148 F.3d 427, 432 (5th Cir. 1998). "<u>We do not, however, in the absence of any proof, assume that the nonmoving party could or would</u>

prove the necessary facts." Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quotation omitted) (emphasis in original)). "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'" National Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation omitted) (emphasis in original).

II.    THE RECORD

A.    Plaintiff's Testimony

Joseph's testimony expanded upon and was consistent with his extensive written submissions.  His testimony is accepted as true solely for purposes of the pending summary judgment motion and only to the extent it does not conflict with the competent summary judgment evidence submitted by defendants.

Plaintiff testified that he is currently incarcerated at Rayburn based upon a conviction for attempted armed robbery in June 1999. He said that he is serving a 25-year prison term.

Joseph confirmed the allegations in his written submissions that the incident upon which his lawsuit is based occurred in August 2006 at Rayburn. He stated that defendant Capt. Dykes "initiated retaliation against me for assisting inmate Donald Vicks with legal affairs that involved the institution while I was an inmate counsel." Joseph described the inmate counsel position as a job to which an inmate may be appointed, in which the appointed inmate assists other inmates with their legal affairs. He said the inmate counsel job description includes researching, litigating, filing complaints, writing clerks of court and "basically just giving general advice and information in assisting inmates with their legal affairs."

Joseph testified that, in his capacity as inmate counsel, he was assisting another inmate, Donald Vicks, and that Vicks had asked Joseph to write to Vicks's attorney with the American Civil Liberties Union ("ACLU"). Joseph stated that, while he was writing the letter, Capt. Dykes found the letter and filed a disciplinary report against Joseph. The disciplinary report stated that Joseph had violated Rayburn Disciplinary Rule 30-K by attempting to communicate malicious and inflammatory remarks detrimental to the institution.

Plaintiff testified that the letter he was writing for inmate Vicks was to an ACLU lawyer whose first name was Katie. Joseph stated that he was writing the letter for Vicks and that the substance of the letter was Vicks's feeling that he was being subjected to retaliation for filing complaints "and a host of other retaliatory tactics that security used and threatened to use against him." Joseph said that Capt. Dykes confiscated the letter and that it was not mailed.

Joseph alleged that his First and Fourteenth Amendment rights to be free from retaliation were violated. He confirmed that the act prompting the alleged retaliation was his writing of the letter for Vicks in his capacity as inmate counsel. Plaintiff stated that the retaliatory act was the charge that he had violated Rule 30-K by communicating information detrimental to the institution. He contended that the disciplinary rule should not have been applied against him because the rule has an exception, which states generally that "this rule shall not apply when seeking legal assistance." Although plaintiff acknowledged that the rule does not specifically address inmate counsel, he argued that the exception should apply in this instance because he was writing the letter in his capacity as inmate counsel.

Joseph testified that he received written notice of the alleged disciplinary violation on July 26, 2006 and he appeared shortly thereafter at a disciplinary hearing concerning

the charge.  He said the disciplinary board consisted of the other two defendants named in this matter, Lt. Smith and Officer Young.

Plaintiff stated that he made a statement in his own defense at the hearing.  He reiterated that his defense was that Rule 30-K should not apply because he was acting in his capacity as inmate counsel in seeking legal assistance for another inmate.  He testified that no other witnesses were called, but that another statement was made on his behalf by inmate counsel Michael Melancon, who basically repeated Joseph's defense.  Plaintiff said the letter was also read during the hearing before the disciplinary board.  He said the letter was directed to the ACLU attorney but it was seized before it had been completed and had not yet been signed by either Vicks or Joseph.

Plaintiff testified that he was found guilty at the disciplinary hearing.  He said the penalty imposed was loss of incentive pay for six months and loss of his job as inmate counsel.  He said he was then assigned to work in the field, although he had since been transferred to vocational training, specifically a carpentry class.  He said he received no other penalty.

Joseph testified that he appealed the guilty finding of the disciplinary board to the Warden's office, but the Warden never responded to his appeal.  Plaintiff testified that he wrote three letters requesting information about the status of his appeal, but received no

responses.  He said he subsequently filed a complaint in the prison's administrative remedies procedure ("ARP"), but it was rejected.

In summary, Joseph confirmed that his complaint in this case is that he was the victim of retaliation in the disciplinary proceeding, essentially for doing the job assigned to him by the institution, in writing a letter for another inmate in his capacity as inmate counsel.  He stated that the relief he seeks in this case is reinstatement to his job as inmate counsel and an award of damages.

On cross-examination, plaintiff stated that he had <u>not</u> received any letter from the Warden's office requesting that he resubmit his appeal.  He stated that if he had received such a letter, he would have resubmitted his appeal because he felt that it had merit, but he never received any such letter.  He acknowledged that he had received a letter from the Warden's office rejecting his separate ARP grievance, but he denied that he ever received any letter from the Warden's office concerning his appeal of the disciplinary board's finding.  Joseph testified that prison records should show that he never signed for any letter from the Warden's office requesting that he resubmit his appeal.

B.    <u>Plaintiff's Declaration Under Penalty of Perjury</u>

Plaintiff submitted a declaration under penalty of perjury, <u>see</u> 28 U.S.C. § 1746, in response to defendants' motion for summary judgment.  Record Doc. No. 27.  In that declaration, he states that, while incarcerated at Rayburn, he personally "witnessed signs

- 8 -

of physical abuse upon inmates, who alleged they were attacked by security." He names three inmates whom he observed with "the most apparent signs of abuse," but not including Vicks. This statement contradicts Capt. Dykes's conclusory averments in his affidavit that Joseph could not provide any evidence to support the allegations in the letter to Ms. Bout.

Joseph also states that he "never received notification of any type to resubmit an appeal in reference to the [Rule] 30K violation." Defendants dispute this allegation.

C.    Defendants' Competent Summary Judgment Evidence

Defendants have submitted several affidavits and copies of documents from plaintiff's prison records, along with a copy of the Disciplinary Rule 30-K that Joseph was disciplined for violating. Some of the allegedly undisputed facts in the affidavits are actually conclusory allegations, are directly disputed by plaintiff's evidence, or are based on speculation rather than personal knowledge. However, considering the competent evidence submitted by defendants, the following additional facts are undisputed, solely for purposes of the pending summary judgment motion.

On July 31, 2006, Capt. Dykes issued a disciplinary report charging Joseph with a violation of Rule 30-K. That rule states:

> GENERAL PROHIBITED BEHAVIORS (Schedule B): The following behaviors which may impair or threaten the security or stability of the unit or well-being of an employee, visitor, guest, inmate or their families are prohibited: . . .

- 9 -

k.     The communication of malicious, frivolous, false, and/or inflammatory statements or information, the purpose of which is reasonably intended to harm, embarrass, or intimidate an employee, visitor, guest or inmate.  <u>This rule shall not apply to information and/or statements communicated for the express purpose of obtaining legal assistance</u>; . . . .

Defendant's Exh. 5 in globo (emphasis added).

Capt. Dykes stated in the report that Joseph's job assignment was "Inm. Counsels" and that:

This date a letter was discovered in a typewriter assigned to the Snow Unit Inmate Counsel Office.  Upon the reading of the letter it was discovered that the inmate was attempting [to] send information out to an individual for another inmate (Donald Vicks 397218) that was malicious in nature toward security at this facility.  In the letter the inmate speaks of repeated beatings and indifference from security for inmate Vicks' medical needs.  The job of inmate counsel is to assist inmates in their law needs[,] not to spread vicious and inflammatory remarks about staff.  Inmate not placed in administrative segregation.

<u>Id.</u>

The same disciplinary report contains the findings of the Disciplinary Board after a hearing held on August 1, 2006.  According to the report, the Board consisted of defendant Officer Young and a non-party, William Deering.  Defendant Lt. Smith is not mentioned in the report.  The report states that Joseph pled not guilty, but was found guilty.  Preprinted form boxes were checked indicating that the report was clear and precise, the officer's version was determined to be more credible than the inmate's, there was a "[l]ack of credible defense/[l]ittle or no defense" and the inmate presented "no

evidence" to refute the charges. Plaintiff was sentenced to a change in quarters, a change in assigned job to a field crew and a loss of incentive pay for 24 weeks. Id.

Defendants also submitted a copy of the offending letter. It has Joseph's name, DOC number and address at the top. The letter is addressed simply to Katie Bout, without any law firm or organization name, street address or other identifying information. The subject line states "RE: Donald Vicks" and the first lines of the letter state: "I'm an inmate counsel at W.C.I.[1] who has been handling Donald's legal affairs. He informed me you have visited him so I assume you are aware of his situation and present living conditions." The letter first asks Ms. Bout to "look into the matter" of Vicks's outgoing mail being returned and then states: "I was asked to write you because Donald believes security is about to retaliate against him." The letter includes Joseph's accounts of "[t]wo recent incidents that I know of" and some other examples of prison guards allegedly retaliating against or beating inmates other than Vicks. The final sentence on the page states that Joseph will file a lawsuit on behalf of an unnamed inmate who was allegedly beaten by guards when that inmate has finished the ARP process. Defendant's Exh. 2.

Capt. Dykes states in an affidavit dated August 10, 2007: "To the best of my knowledge the person 'Katie Bout' is actually a Ms. Katherine Booth, Law Clerk in

_____

[1]Rayburn was formerly known as Washington Correctional Institute.

private practice." Defendant's Exh. 1.  The court cannot accept this equivocal statement as establishing that Katie Bout is Katherine Booth, that she was a law clerk in private practice when the letter was written about one year before the affidavit was signed, or that Capt. Dykes knew or believed this to be true at that time.  "[S]tatements that might possibly be construed as raising a genuine issue of fact also fail, because they do not appear to be based on personal knowledge, but rather on speculation.  Statements made on information and belief do not constitute proper summary judgment evidence under rule 56(e)." de la O v. Housing Auth., 417 F.3d 495, 501-02 (5th Cir. 2005) (citing Fed. R. Civ. P. 56(e); Bolen v. Dengel, 340 F.3d 300, 313 (5th Cir. 2003)).  The Disciplinary Report, which was contemporaneously prepared at the time of the incident, contains no such identifying information.  Resolving factual conflicts in favor of Joseph solely for purposes of defendants' summary judgment motion, the court accepts as true Joseph's testimony that Vicks told him that Katie Bout was a lawyer with the ACLU.

Major Larry Grow, a Support Services Supervisor at Rayburn who handles inmate appeals, avers in his affidavit that Joseph did not file an appeal of his disciplinary conviction.  The Warden's office received Joseph's letter dated August 16, 2006, inquiring about the status of the appeal he had allegedly sent on August 9, 2006.  Joseph denied that he ever received the responsive memo from the Warden's office dated August 16, 2006, stating that his appeal of the disciplinary board's finding had not been

received and asking him to resubmit it.  Defendant's Exh. 5 in globo.  Thus, it is undisputed that no appeal was ever received by the Warden's office.

On September 14, 2006, the Warden rejected plaintiff's ARP request because it concerned a disciplinary matter that should have been addressed through a disciplinary appeal, rather than an ARP request.  Defendant's Exh. 5 in globo.

III.   ANALYSIS

A.   No First or Fourteenth Amendment Right to Act as Inmate Counsel

Joseph alleges that prison officials retaliated against him for writing a letter to an attorney for another prisoner in his capacity as inmate counsel, an activity that he contends was protected by the First and Fourteenth Amendments.

"To state a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that[,] but for the retaliatory motive[,] the complained of incident . . . would not have occurred."  Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995).  Before reaching the question whether retaliation occurred, therefore, the court must address whether plaintiff has a specific constitutional right to act as inmate counsel.

The Fifth Circuit has consistently held that no such constitutional right exists.

A prisoner has no constitutionally protected interest in a particular facility or a specific work assignment.  The right to act as inmate counsel in a certain facility is no exception to that general rule.  As the Eighth Circuit explained:

> It is well established that inmates have a constitutional right of access to the court.  This right entitles inmates to receive legal assistance from fellow inmates unless prison officials provide reasonable alternative assistance.  In the absence of reasonable assistance, "[j]ailhouse lawyers have standing to challenge official action that prevents them from assisting other prisoners."  There is, however, no right to be or to receive legal assistance from a jailhouse lawyer independent of the right of access to the court.  Accordingly, the transfer of a prisoner for "writ-writing" does not in and of itself constitute the violation of a protected right.

Tighe v. Wall, 100 F.3d 41, 42-43 (5th Cir. 1996) (quoting Gassler v. Rayl, 862 F.2d 706, 707-08 (8th Cir. 1988)) (citing Olim v. Wakinekona, 461 U.S. 238, 244-45 (1983); Bulger v. United States Bureau of Prisons, 65 F.3d 48, 49 (5th Cir. 1995)) (additional citations omitted).

The facts of Tighe are substantially similar to the undisputed facts in the instant case.  Plaintiff prisoner Tighe was assigned to work as an inmate counsel.  He was removed from the position and transferred to another correctional facility because prison officials believed that he had violated prison rules by "improperly call[ing] the family of another inmate about allegations of physical abuse within the prison."  Id. at 42.  Tighe sued, alleging that prison officials had retaliated against him for exercising his First Amendment right to provide legal assistance to fellow inmates.  Id.  He argued only that other inmates were deprived of his legal assistance, not that he was denied access to the

- 14 -

courts on his own behalf.  Id. at 43.  The court held that Tighe "failed to demonstrate a violation of a constitutional right."  Id.

Several months after Tighe was decided, the Fifth Circuit again held that "writ-writing," or assisting fellow inmates with their legal matters, is not a constitutionally protected activity.  "Thus, neither any frivolous filings nor secondary litigation activity, i.e., legal research and writing that does not involve preparation of lawsuits challenging a writ writer's own conviction(s) or the conditions of his or her confinement, may comprise the basis of a retaliation claim."  Johnson v. Rodriguez, 110 F.3d 299, 311 (5th Cir. 1997) (emphasis added).  In the instant case, as in Tighe and Johnson, Joseph has failed to demonstrate a violation of a First Amendment right.

As to plaintiff's Fourteenth Amendment claim, the protections of the Due Process Clause "are only invoked when State procedures which may produce erroneous or unreliable results imperil a protected liberty or property interest."  Id. at 308.  Thus, to prevail on a substantive due process claim under the Fourteenth Amendment, plaintiff must first allege a deprivation of a constitutionally protected liberty or property right. He must also demonstrate that defendant's action was not rationally related to furthering a legitimate governmental interest.  "The question is only whether a rational relationship exists between the [policy] and a conceivable legitimate objective.  If the question is at least debatable, there is no substantive due process violation."  Simi Inv. Co. v. Harris

County, 236 F.3d 240, 249-50, 251 (5th Cir. 2000) (quotation omitted); accord Energy

Mgmt. Corp. v. City of Shreveport, 467 F.3d 471, 481 (5th Cir. 2006); Mikeska v. City

of Galveston, 451 F.3d 376, 379 (5th Cir. 2006).

Joseph fails to state the violation of any protected right.  It is well established that

"prisoners have no liberty or protected property interest in particular prison job

assignments" that would entitle them to due process protection.   Guzman v.

Hollingsworth, 231 Fed. Appx. 382, 2007 WL 1806829, at *1 (5th Cir. 2007) (citing

Bulger, 65 F.3d at 49); accord James v. Quinlan, 866 F.2d 627, 630 (3d Cir. 1989); Flittie

v. Solem, 827 F.2d 276, 279 (8th Cir. 1987); Ingram v. Papalia, 804 F.2d 595, 596 (10th

Cir. 1986); Gibson v. McEvers, 631 F.2d 95, 98 (7th Cir. 1980); Brian v. Werner, 516

F.2d 233, 240 (3d Cir. 1975).

As to the job of inmate counsel, the Fourth Circuit has specifically held that

[a]n assignment to the job of law clerk does not invest an inmate, or those
he assists, with a property interest in his or her continuation as a law clerk.
Despite the aspect of property in the accumulation of experience and
intellectual capital by the inmate law clerk, job assignment and
reassignment remain the prerogative of the prison administrators.

Adams v. James, 784 F.2d 1077, 1079 (4th Cir. 1986).

Because Joseph has no protected liberty or property interest in being an inmate

counsel, he cannot mount a challenge against defendants' removal of him from that

position on substantive due process grounds.   Cf. Johnson, 110 F.3d at 308 ("It is

- 16 -

therefore axiomatic that because Texas prisoners have no protected liberty interest in parole they cannot mount a challenge against any state parole review procedure on procedural (or substantive) Due Process grounds.").

Accordingly, no genuine issue of material fact exists and it is clear as a matter of law that Joseph has not suffered a constitutional violation.  Defendants' motion for summary judgment should be granted and plaintiff's claim that his First and Fourteenth Amendment rights to act as inmate counsel have been violated should be dismissed with prejudice.

B.    Retaliation

Joseph asserts that he was subjected to retaliation for having acted as an inmate counsel by writing the letter for Vicks.  The law in the Fifth Circuit concerning prisoner retaliation claims has undergone substantial evolution in recent years.  It is based on the following general principles:

> It is well established that prisoners enjoy a constitutional right of access to the courts.  It is equally well established that prison officials may not retaliate against a prisoner for exercising this right.  The elements of a retaliation claim are the invocation of a specific constitutional right, the defendants' intent to retaliate against the plaintiff for his or her exercise of that right, a retaliatory adverse act, and causation, i.e., but for the retaliatory motive the complained of incident . . . would not have occurred.  With respect to the last element, we [have] emphasized that an action motivated by retaliation for the exercise of a constitutionally protected right is actionable even if the act, when taken for a different reason, may have been legitimate.

Clarke v. Stalder, 121 F.3d 222, 231 (5th Cir. 1997), vacated in part and reinstated in relevant part, 154 F.3d 186 (5th Cir. 1998) (citing Bounds v. Smith, 430 U.S. 817 (1977); Woods, 60 F.3d at 1164-66; Johnson, 110 F.3d at 310) (quotations and additional citations omitted).

In Woods, the Fifth Circuit, applying the general First Amendment principles addressed above, affirmed the district court's denial of defendants' motion for summary judgment, which had sought dismissal of a prisoner's retaliation claim. The Fifth Circuit agreed that the inmate's retaliation claim should be permitted to proceed, but in doing so it expressed the following caution: "The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." Woods, 60 F.3d at 1166 (citation and quotation omitted). The Fifth Circuit warned that trial courts must "carefully scrutinize these claims." Id.

> To state a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident . . . would not have occurred. This places a significant burden on the inmate . . . . The inmate must produce direct evidence of motivation or, the more probable scenario, "allege a chronology of events from which retaliation may plausibly be inferred."

Id. (citations omitted) (emphasis added).

- 18 -

A year later, the United States Supreme Court reexamined the scope of prisoners' First Amendment right of access to the courts in <u>Lewis v. Casey</u>, 518 U.S. 343 (1996). The Supreme Court made clear in <u>Lewis</u> that an inmate <u>must establish actual injury</u> to state a claim for denial of his right of access to the courts.  The Court stated that the First Amendment right of prisoners to access to the courts is the right to "have a reasonably adequate opportunity to file <u>non</u>frivolous legal claims challenging <u>their</u> convictions or conditions of confinement."  <u>Id.</u> at 356 (emphasis added).

A year after <u>Lewis</u>, the Fifth Circuit reviewed another retaliation claim by inmates in <u>Johnson</u>.  In that case, a magistrate judge had concluded that certain aspects of the Texas parole system, which permitted parole board members to consider prisoners' participation in inmate litigation in connection with their parole determinations, violated the inmates' First Amendment right of access to the courts.  The appeals court reversed and remanded this portion of the trial court's findings.  <u>Johnson</u>, 110 F.3d at 310-14.

The Fifth Circuit again noted the long recognized rule that prisoners generally enjoy a constitutional right of access to the courts.  <u>Id.</u> at 310.  Quoting the Supreme Court's decision in <u>Lewis</u>, however, the Fifth Circuit held that "[t]his right of access for prisoners is not unlimited . . . ; rather it encompasses only 'a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement."  <u>Id.</u>  Significantly for present purposes, the Fifth Circuit concluded:

"Thus, neither any frivolous filings nor <u>secondary litigation activity, i.e., legal research</u> <u>and writing that does not involve preparation of lawsuits challenging a writ writer's own</u> <u>conviction(s) or the conditions of his or her confinement</u>, may comprise the basis of a retaliation claim." <u>Id.</u> (emphasis added).

Joseph testified that Capt. Dykes charged him with violating Rule 30-K and that Officer Young and Lt. Smith convicted him of the charge, despite his defense that the exception to Rule 30-K exonerated him in his capacity as inmate counsel.  He contends in this court that the disciplinary action was retaliatory.  However, Joseph admits that he prepared the letter on behalf of another inmate.  As the Fifth Circuit held in <u>Johnson</u>, legal research and writing that does <u>not</u> involve preparation of lawsuits challenging a writ writer's <u>own</u> conviction(s) or the conditions of his confinement cannot comprise the basis of a retaliation claim.  No violation of a specific constitutional right occurred as a result of the allegedly retaliatory acts.

Joseph has been afforded full access to this court.  Actionable retaliation cannot occur in response to an inmate counsel's efforts to obtain access to the courts on behalf of another inmate.  Thus, plaintiff wholly fails to establish any genuine issue of material fact as to this actual injury/legal prejudice element of his First Amendment retaliation claim.  Accordingly, defendants' motion for summary judgment should be granted and plaintiff's retaliation claim should be dismissed with prejudice.

C.     Disciplinary Charges and Proceedings

To the extent that Joseph may be alleging that he was denied due process when he was disciplined for preparing the letter for Vicks and/or when the appeal that he allegedly submitted was never processed, he fails to present a genuine issue of disputed material fact that his constitutional rights were violated.

In Sandin v. Connor, 515 U.S. 472, 481-83 (1995), the Supreme Court held that analysis of a convicted prisoner's due process claim relating to prison disciplinary action begins with determining whether a constitutionally protected liberty interest exists. "Liberty interests protected by the Fourteenth Amendment may arise from two sources– the Due Process Clause itself and the laws of the States." Hewitt v. Helms, 459 U.S. 460, 466 (1983). In Sandin, the Supreme Court recognized that although the States may create liberty interests, "these interests will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (citations omitted). Thus, in Sandin, when a prisoner was placed in disciplinary segregation for 30 days and the discipline did not inevitably affect the duration of his sentence, the Court held that due process does not require that a prisoner be afforded the procedural mechanisms previously prescribed in Wolff v. McDonnell, 418 U.S. 539 (1974), and Hewitt, 459 U.S. at 460.

"[T]he Due Process Clause does not protect every change in conditions of confinement which has a substantial adverse effect upon a prisoner." Madison v. Parker, 104 F.3d 765, 767 (5th Cir. 1997). The Madison court held that a prisoner's 30-day commissary and cell restrictions imposed as punishment for disciplinary violations were "merely changes in the conditions of his confinement and do not implicate due process concerns." Id. at 768. The court further held that such restrictions are "penalties, which do not represent the type of atypical, significant deprivation in which a state might create a liberty interest." Id. Examples of disciplinary hardships that would qualify as so atypical and significant as to implicate due process considerations include unwanted administration of antipsychotic drugs, involuntary commitment to a mental hospital or extension of the prisoner's sentence for his underlying criminal conviction. Sandin, 515 U.S. at 493.

In Wolff, the Supreme Court held that because disciplinary proceedings are not part of a criminal prosecution, the prisoner is not afforded "the full panoply of rights" provided in criminal proceedings. Wolff, 418 U.S. at 556. Nevertheless, the Wolff court held that prison officials must afford the prisoner some due process in disciplinary proceedings before imposing punishment, including notice of the violation, a hearing and some opportunity to present evidence on the prisoner's behalf. Id.

In the instant case, the undisputed facts establish that Joseph received a change in quarters, a change in assigned job to a field crew and a loss of incentive pay for 24 weeks as punishments for his alleged disciplinary violation.  As to these types of punishment, plaintiff was entitled to no particular process under Sandin.  None of these punishments constitute such an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" that particular forms of process were required.  Sandin, 515 U.S. at 484.

To the extent Joseph may be claiming that prison officials are asserting false disciplinary charges against him in connection with his retaliation allegations addressed above, the case law is clear that an allegation that false disciplinary charges were asserted against an inmate by a prison official fails to state a claim under Section 1983 when the prisoner is afforded due process protection through a subsequent hearing.  Collins v. King, 743 F.2d 248, 253-54 (5th Cir. 1984); Hanrahan v. Lane, 747 F.2d 1137, 1141 (7th Cir. 1984); Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir. 1986).

In this case, Joseph does not dispute that he had a disciplinary hearing, and the undisputed facts, including especially his own testimony, establish that the hearing was adequate under Wolff.  Plaintiff had an opportunity to make a statement and he was represented by inmate counsel, who also made a statement at the hearing.  Thus, defendants' motion for summary judgment should be granted and plaintiff's claim, if any,

that his due process rights were violated in his disciplinary proceedings should be dismissed with prejudice.

## **RECOMMENDATION**

Defendants' actions are certainly questionable as a matter of sensible prison administration.  In effect, they penalized plaintiff for merely doing the job which prison officials themselves had assigned to him.  Whether these kinds of heavy-handed actions constitute sound prison management as opposed to mindless bureaucratic bullying, however, is not the question for determination by this court, whose business is not prison management.  Rather, the question before this court is whether the undisputed facts established on the current record support a cognizable Section 1983 claim, which can only be accomplished if some violation of a constitutional right can be established.  For the reasons set out above, I regretfully must conclude that binding United States Supreme Court and Fifth Circuit case law are clear that no violation of plaintiff's clearly established constitutional rights occurred under these circumstances.

Thus, it is **RECOMMENDED** that defendants' motion for summary judgment be **GRANTED** and that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain

- 24 -

error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this _____30th_____ day of November, 2007.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

- 25 -